UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

THE CITY OF NEW YORK,

                                 Plaintiff,

-against-

SPRAGUE OPERATING RESOURCES, LLC,

                                 Defendant.

-------------------------------------------------------------------x

**21 CV_____  (\_\_\_)**

**COMPLAINT**

Plaintiff demands trial by jury

Plaintiff The City of New York, by its attorney, James E. Johnson, Corporation Counsel of the City of New York, alleges upon personal knowledge as to itself and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. Plaintiff The City of New York (the "City") brings this action against Defendant Sprague Operating Resources LLC ("Sprague") for breach of contract.

2. The City's claims in this action relate to Sprague's failure to remit to the City the full amount of the Biodiesel Blender's Tax Credit of $1 per gallon for calendar years 2017 through 2019, as required by Sprague's contracts with the City, totaling $8,542,372.

3. Sprague's failure to remit the full $1 per gallon Biodiesel Blender's Tax Credit to the City constitutes a breach of Sprague's heating and vehicle fuel contracts with the City, causing damage to the City equal to $1 per gallon of blended biodiesel sold by Sprague to the City during the years 2017 through 2019, or $8,542,372.

## PARTIES

4. The City is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

5. Sprague is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located at 185 International Drive, Portsmouth, New Hampshire 03801. Sprague is an authorized foreign limited liability company in the State of New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the City's claims based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a) and (c), because the City is a citizen of the State of New York, Sprague is a citizen of the States of Delaware and New Hampshire, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the City's claims occurred in the Eastern District of New York.

## FACTS

### Background

8. The City's Department of Citywide Administrative Services ("DCAS") is the City agency charged with, among other things, purchasing supplies and equipment for use in the administration of City government.

9. DCAS's Office of Citywide Procurement ("OCP") is responsible for purchasing goods and services on behalf of all City agencies. OCP solicits bids from vendors, awards a wide variety of contracts, and manages a portfolio of approximately 1,000 multi-year

citywide requirements contracts, representing $1.5 billion in annual encumbrances across 100 City agencies.

10. OCP purchases biodiesel blends for heating buildings and fueling fleet vehicles that are used by City agencies.

11. Beginning with the New York City Department of Parks and Recreation in 2005, the City began using biodiesel blends first in fleet vehicles and then buildings.

12. The City is now one of the largest biodiesel consuming organizations in the country and has legislated bioheat for all City and private buildings and biodiesel for City fleet vehicles.

13. The City employs biodiesel blends as part of its efforts to improve environmental emissions and diversify fuel sources.

## The Biodiesel Blenders' Tax Credit

14. In 2005, Congress enacted the Biodiesel Blenders' Tax Credit, 26 U.S.C. §6426(c) (also referred to herein as the "Credit"), as part of the American Jobs Creation Act of 2004 §301, 108 P.L. 357, 118 Stat. 1418.

15. The Credit "is the product of the applicable amount and the number of gallons of biodiesel used by the taxpayer in producing any biodiesel mixture for sale or use in a trade or business of the taxpayer."  26 U.S.C. §6426(c)(1).

16. The Credit is equal to $1 per gallon of biodiesel.  26 U.S.C. §6426(c)(2).

17. As originally enacted, the Credit was set to expire on December 31, 2006.

18. In the years since its original enactment, the Biodiesel Blenders' Tax Credit has lapsed and been retroactively reinstated several times.

- 4 -

19. On December 18, 2015, Congress retroactively extended the Credit from December 31, 2014 to December 31, 2016. Consolidated Appropriations Act 2016, 114 P.L.113, 129 Stat. 2242, §185(b)(1).

20. On February 9, 2018, Congress retroactively extended the Credit from December 31, 2016 to December 31, 2017. Bipartisan Budget Act of 2018, 115 P.L. 123, 132 Stat. 64, §40407(b)(1).

21. Accordingly, during all of 2017, the Credit was not in place, and it was not retroactively reinstated for 2017 until February 9, 2018.

22. On December 20, 2019, Congress retroactively extended the Credit from December 31, 2017 to December 31, 2022. Further Consolidated Appropriations Act, 2020, 116 P.L. 94, §121(b)(1)(A); *see* 26 U.S.C. §6426(c)(6).

## The Sprague Contracts

**A.   The Heating Fuel Contract**

23. In 2015, DCAS put out for bid a requirements contract for the purchase of 17 grades of heating oil, bioheating oil (biodiesel), and bioblend (heating oil blended with biodiesel) for delivery in the five boroughs and citywide, entitled Heating Oil, Bioblend & Bioheat, Bulk Delivery, Contract No. 3687007, governing purchases during the period from June 1, 2015 to May 31, 2020 (the "Heating Fuel Contract").

24. Sprague submitted bids for 7 of the 17 various grades of heating oil, biodiesel and bioblend.

25. On April 13, 2015, OCP opened the bids submitted under the Heating Fuel Contract, and on May 28, 2015, the Contract was registered and Sprague received awards thereunder based on its seven submitted bids.

26. The Heating Fuel Contract is a variable price contract. The prices the City pays varies with the market price based upon a set formula contained in the Special Instructions for Bidders.

27. The price that the City pays under the Heating Fuel Contract is calculated as a spread, determined at the time of the bid, over a base price, which is the average market price for fuel oil and biodiesel as published by Argus Media Group ("Argus").

28. As the Biodiesel Blender's Tax Credit had expired at the time the contract was bid, the Special Instructions for Bidders under the Heating Fuel Contract provides: "In the event that the Biodiesel Blender's Tax Credit per gallon is reinstated, the Contractor shall pass on the credit to the City of New York." Heating Fuel Contract, Special Instructions for Bidders, at B 013.

**B.    The Vehicle Fuel Contract**

29. In 2016, DCAS put out for bid a requirements contract for the purchase of seventeen grades of ultra low sulfur diesel ("ULSD") and biodiesel for use as fuel in the City's fleet vehicles for bulk delivery at various locations in New York City, and for rack pick-up at Sprague's designated terminal in the Bronx, entitled Diesel and Biodiesel, Bulk Delivery and Rack Pick Up, Contract No. 3687331, governing purchases during the period from June 1, 2016 to May 31, 2019 (the "Original Vehicle Fuel Contract").

30. Sprague submitted bids for all seventeen various grades of ULSD and biodiesel.

31. On May 9, 2016, OCP opened the bids submitted under the Original Vehicle Fuel Contract, and on May 24, 2016, the Contract was registered and Sprague received awards thereunder based on its seventeen submitted bids.

32. In 2019, DCAS put out for bid a renewal of the Original Vehicle Fuel Contract. Contract No. 3987206 governed purchases of the same seventeen grades of ULSD and biodiesel and the various locations specified in the Original Vehicle Contract, during the period from June 1, 2019 to May 31, 2020 (the "Renewal Vehicle Fuel Contract," and together with the Original Vehicle Fuel Contract, the "Vehicle Fuel Contract").

33. Sprague submitted bids for all 17 various grades of ULSD and biodiesel, and Sprague received awards thereunder based on its 17 submitted bids.

34. The Special Instructions for Bidders under both the Original and Renewal Vehicle Fuel Contracts contain the following provisions relating to the Biodiesel Blender's Tax Credit:

> If the Biodiesel Blender's Tax Credit or any similar incentive legislation is reinstated, the vendor must pass on the credit or incentive to the City of New York under the terms and conditions of this contract.
>
> \*    \*    \*
>
> The bid prices should not incorporate the Blender's Tax Credit. A reduction for the Blender's Credit must be applied to all invoices when the Blender's Credit is in place. Invoices must clearly show the total current cost for fuel, the reduction tied to the tax credit, and the revised cost to the City. If the Blender's Tax Credit is not in place, only the current bid prices will apply.

Original Vehicle Fuel Contract, Special Instructions for Bidders, at B 012; Renewal Vehicle Fuel Contract, Special Instructions for Bidders, at B 012.

35. The Original Vehicle Fuel Contract, but not the Renewal Vehicle Fuel Contract, contained the following additional provision relating to the Biodiesel Blender's Tax Credit:

> If the Biodiesel Blender's Tax Credit or any similar incentive legislation is rescinded, the vendor must itemize this tax on all

> invoices submitted for payment. The City will then begin paying the itemized amount for future invoices.

Original Vehicle Fuel Contract, Special Instructions for Bidders, at B 012.

36. The Renewal Vehicle Fuel Contract, but not the Original Vehicle Fuel Contract, contained the following additional provision relating to Sprague's obligation to pass on the Biodiesel Blender's Tax Credit to the City:

> This includes the value of all credits due retroactively to the start date of the subject contract. Application for and receipt of the credit by the vendor or the vendor's suppliers is the vendor's responsibility, not the City's and does not limit the City's right to the value of the Credit.

Renewal Vehicle Fuel Contract, Special Instructions for Bidders, at B 012.

37. Similar to the Heating Fuel Contract, the Vehicle Fuel Contract is a variable price contract. The prices the City pays varies with the market price based upon a set formula contained in the Special Instructions for Bidders.

## C.  The City Purchase Contract

38. OCP's Heating and Vehicle Fuel Contracts were let as requirements contracts pursuant to the City Purchase Contract, a form contract that is given to bidders as part of the Invitation for Bids.

39. The City Purchase Contract includes General Definitions, Standard Instructions to Bidders, General and Special Conditions, and certain Affirmations. A contract procured through the City Purchase Contract includes these items, and also the documents relating to the specific goods being purchased: the Bid Book, Special Instructions to Bidders, the Invitation for Bids, and the vendor's bid and schedule of quantities and prices.

40. The Standard Instructions for Bidders and the General Conditions of the City Purchase Contract contain provisions that are at issue in the Heating and Vehicle Fuel Contracts.

41. Section 1.1 of the Standard Instructions for Bidders provides:

> Request for Interpretation or Correction. Prospective bidders must examine the Contract Documents carefully and before bidding must request the Agency Chief Contracting Officer in writing for an interpretation or correction of every patent ambiguity, inconsistency or error therein which should have been discovered by a reasonably prudent bidder. Such interpretation or correction, as well as any additional contract provisions the Agency Chief Contracting Officer may decide to include, will be issued in writing by the Agency Chief Contracting Officer as an addendum to the contract, which will be sent by mail or delivered to, and acknowledged by, each person recorded as having received a copy of the contract documents from the Contract Clerk, and which will also be posted at the place where the contract documents are available for the inspection of prospective bidders. Upon such mailing or delivery and posting, such addendum shall become a part of the contract documents, and binding on all bidders, whether or not actual notice of such addendum is shown.
>
> Only the written interpretation or correction given by the Agency Chief Contracting Officer is binding. Bidders are warned that no other Officer, agent or employee of the City is authorized to give information concerning, or to explain or interpret, the contract.

42. Section 9.4E of the General Conditions of the City Purchase Contract provides:

> If the City finds that a price or cost reduction should be made, the Contractor agrees not to raise the following matters as a defense:
>
> ….
>
> (b) The City should have known that the cost or pricing data in issue were defective even though the contractor took no affirmative action to bring the character of the data to the attention of the City;

### Sprague's Status as a Biodiesel Blender Eligible for the Credit

43. The Heating Fuel Contract requires vendors to receive a certification from the National Biodiesel Accreditation Commission ("NBAC"). The Heating Fuel Contract requires vendors to be certified as either a BQ-9000 Accredited Producer or a BQ9000 Certified Marketer of biodiesel or to procure biodiesel from another BQ9000 Accredited Producer or BQ9000 Certified Marketer of biodiesel.

44. Similar to the Heating Fuel Contract, the Vehicle Fuel Contract also requires vendors to be certified as either a BQ-9000 Accredited Producer or a BQ-9000 Certified Marketer of biodiesel or to procure biodiesel from another BQ-9000 Accredited Producer or BQ9000 Certified Marketer of biodiesel.

45. Upon information and belief, at all relevant times, Sprague has held a certification from NBAC as a BQ-9000 Accredited Producer of biodiesel.

### Sprague's Failure to Remit the 2017 through 2019 Biodiesel Blenders' Tax Credit

46. Following the retroactive reinstatement of the Credit on December 18, 2015 covering calendar years 2015 and 2016, on or about April 19, 2016, Sprague remitted the full amount of the Credit for calendar year 2015 in the amount of $1,912,741.65, and on or about June 7, 2017, Sprague remitted the full amount of the Credit for calendar year 2016 in the amount of $336,094.15

47. Despite making payments to the City remitting the full amount of the credit for calendar years 2015 and 2016 following the earlier retroactive reinstatement of the Credit, Sprague has failed to make such payments for calendar years 2017, 2018, and 2019 to the City following the retroactive reinstatement of the credit for those years.

48. During 2017, the City purchased 2,724,601 gallons in total of biodiesel from Sprague under both the Heating and Vehicle Fuel Contracts, and is therefore owed $2,724,601 from Sprague for the 2017 Credit.

49. During 2018, the City purchased 2,935,966 gallons in total of biodiesel from Sprague under both the Heating and Vehicle Fuel Contracts, and is therefore owed $2,935,966 from Sprague for the 2018 Credit.

50. During 2019, the City purchased 2,881,805 gallons in total of biodiesel from Sprague under both the Heating and Vehicle Fuel Contracts, and is therefore owed $2,881,805 from Sprague for the 2019 Credit.

51. Sprague therefore owes the City a total of $8,542,372 for the unremitted Biodiesel Tax Credit for the years 2017 through 2019.

52. Sprague resumed remitting the Credit to the City on each invoice presented starting in 2020, equal to $1 per gallon of biodiesel purchased, without any explanation for failing to remit the Credit for calendar years 2017 to 2019.

53. Following retroactive reinstatement of the Credit on February 9, 2018 covering calendar year 2017, on May 2, 2018, OCP contacted Sprague to inquire about reimbursement of the Credit for calendar year 2017.

54. In the first of at least two different explanations for not reimbursing the 2017 Credit, on May 4, 2018, Sprague stated that, "as a result of structural changes to the 2018 [Federal] legislation," Sprague would be returning only up to 50% of the 2017 Tax Credit.

55. Sprague's statement that the change in reimbursement amount was due to "structural changes to the 2018 [Federal] legislation" is false; the only change to the Credit made

in the 2018 legislation extended the termination date from December 31, 2016 to December 31, 2017.

56. By email dated July 12, 2018 to DCAS Deputy Commissioner and NYC Chief Fleet Officer Keith Kerman, Shelby Neal, the Director of Governmental Relations, and Kurt Kovarik, Vice President for Federal Affairs, for the National Biodiesel Board, a commercial trade association representing the biodiesel industry, confirmed that Congress reinstated the Credit without any change in conditions.

57. In a meeting and presentation in DCAS's offices on September 12, 2018 and in a follow up letter dated September 29, 2018, Sprague abandoned its claim that the reduction in reimbursement for the 2017 Credit was due to a change in the federal statute, focusing instead on a purported change in Argus' pricing methodology for biodiesel.

58. The September 12 meeting was the first DCAS learned of a purported change to Argus' pricing methodology for biodiesel.

59. According to Sprague, effective January 26, 2017, Argus' B100 biodiesel market price assessments were adjusted to reflect the purported industry practice of splitting the Credit equally between blender and supplier when and if the Credit is reinstated.

60. Upon information and belief, although Sprague actually receives the full credit and claims the full credit on its tax returns, it has side agreements with its suppliers that require Sprague to pay back an agreed upon percentage of the amount of the credit to the supplier.

61. Upon information and belief, therefore, it is Sprague, not its suppliers, that actually receive the Credit, and the Credit is only split with the suppliers by virtue of its agreement with the suppliers; the suppliers are not claiming the credit from the United States.

62. According to Sprague, its contracts with suppliers split the Credit so that Sprague paid back to the supplier anywhere from 50% to 100% of the total $1 per gallon Credit.

63. Upon information and belief, Sprague is not able to determine which of its suppliers supplied which of its customers (including the City) with biodiesel.

64. Accordingly, Sprague is unable to calculate the exact amount of the Credit it allegedly retained pursuant to its supply contracts for biodiesel blends sold to the City.

65. Although Argus changed its pricing methodology effective January 26, 2017, the industry practice of the producer and blender of biodiesel splitting the tax credit apparently predates that change in methodology and the bidding of both the Heating and Vehicle Fuel Contracts.  *See* Scott Irwin, *Why Do Blenders Share Retroactively Reinstated Tax Credits with Biodiesel Producers*, FarmDoc Daily at 1-2 (July 22, 2015) (noting that Renewable Energy Group, a United States biofuel producer, and Nestle Oil, a Finnish biofuel producer, both reported sharing the value of the Credit with blenders in 2014).

66. During the bidding process on both the Heating and Vehicle Fuel Contracts,  Sprague never made any request for interpretation of the provision requiring bidders to pass along the Biodiesel Blenders' Tax Credit to the City, as provided for in Section 1.1 of the Standard Instructions for Bidders.

67. Section 9.4E(b) of the General Conditions of the City Purchase Contract put the obligation on Sprague to notify the City of the change in Argus' pricing methodology and the change in industry practice because Sprague cannot rely upon an argument that the City should have known of the change in methodology or industry practice as a defense when it "took no affirmative action to bring the character of the data to the attention of the City."

68. Despite the City's demand for reimbursement, Sprague has failed to remit the Credit for the 2017, 2018, and 2019 to the City.

## AS AND FOR A FIRST CAUSE OF ACTION FOR
## BREACH OF CONTRACT

69. Plaintiff realleges the allegations set forth in Paragraphs 1-68 above as if fully set forth herein.

70. The Heating and Vehicle Fuel Contracts constitute valid and fully enforceable agreements between the City and Sprague.

71. The City fulfilled its obligation to Sprague under the Heating and Vehicle Fuel Contracts.

72. Sprague breached the Heating and Vehicle Fuel Contracts by failing to remit the full amount of the Biodiesel Blenders' Tax Credit of $1 per gallon for purchases of biodiesel by the City during calendar years 2017 through 2019.

73. As a result of Sprague's breach of contract, the City has been damaged in an amount to be determined at trial, but not less than $8,542,372.

- 14 -

## PRAYER FOR RELIEF

**WHEREFORE**, the City demands:

(1)     Judgment for damage resulting from breach of contract, in an amount to be determined at trial, but not less than $8,542,372, plus interest on the amount owed to the City; and

(2)     For such other relief as this Court may deem just and proper.

Dated: New York, New York
       May 18, 2021

                 JAMES E. JOHNSON
                 Corporation Counsel of the
                   City of New York
                 *Attorney for the City*
                 100 Church Street, 20-82
                 New York, New York 10007
                 212.356.2299
                 rcosta@law.nyc.gov

                 By:     /s/ Richard J. Costa
                     Richard J. Costa
                     Assistant Corporation Counsel